*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-432

OFFICE OF RISK MANAGEMENT, APPELLANT,

v.

SHEILA JORDAN, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAP-7898-17)

(Hon. William M. Jackson, Trial Judge)

(Argued June 9, 2020                                    Decided September 18, 2020)

*Caroline S. Van Zile*, Deputy Solicitor General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Lucy E. Pittman*, Assistant Attorney General, were on the brief, for appellant Office of Risk Management.

*Charles Tucker, Jr.*, for appellee.

Before THOMPSON, BECKWITH, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant, the Office of Risk Management (ORM), challenges an order of the Superior Court granting a workers' compensation award to appellee Sheila Jordan. We reverse.

**I.**

For current purposes, we take the following facts to be undisputed. In March 2016, Ms. Jordan was injured while working as an investigator at the District of Columbia's Office of the Attorney General. Specifically, a faulty fuel pump sprayed natural gas on Ms. Jordan's face as she fueled her work vehicle. After the incident, Ms. Jordan was treated for accidental toxic chemical exposure, and she was initially unable to work. She submitted a workers' compensation claim, and the Public Sector Workers' Compensation Program (PSWCP) awarded her temporary total disability benefits based on the diagnosis of a chemical burn.

Ms. Jordan returned to work in September 2016, and her temporary wage-loss benefits therefore ended. A few months later, she was evaluated by Dr. Cynthia Lewis, who performed a psychiatric examination. Dr. Lewis diagnosed Ms. Jordan as having post-traumatic stress disorder (PTSD), which Dr. Lewis concluded was directly related to Ms. Jordan's injury and caused a 6% permanent impairment to Ms. Jordan's "whole person."

Based on Dr. Lewis's diagnosis, Ms. Jordan sought an award of permanent partial disability benefits under D.C. Code § 1-623.07 (2016 Repl.), which provides compensation to public-sector employees for work-related "permanent disability involving the loss, or loss of use, of a member or function of the body." D.C. Code § 1-623.07(a). The amount of that compensation is set at two-thirds of the claimant's monthly pay, *id.*, and compensation is provided for a period of weeks that depends on the part of the body involved, D.C. Code § 1-623.07(c). Section 1-623.07(c) lays out a detailed "compensation schedule," listing various body parts and specifying the duration of the award applicable to each body part. Section 1-623.07(a) provides that compensation will be awarded "as provided by the schedule in" § 1-623.07(c).

Ms. Jordan's application stated that she was seeking compensation for an injury to her "brain/head." After her application was denied by the PSWCP, she sought review of that denial. The Chief Risk Officer (CRO) of ORM upheld the denial of benefits. The CRO concluded, among other things, that (1) the brain is expressly excluded as a basis for an award under § 1-623.07, D.C. Code § 1-623.01(16) (2016 Repl.); and (2) awards based on injuries to the head are limited to physical disfigurement, D.C. Code § 1-623.07(c)(21) (providing for compensation in cases involving serious disfigurement of head).

Ms. Jordan sought review in the Superior Court. The Superior Court reversed, ruling that mental and emotional injuries deriving from physical injuries are compensable under § 1-623.07. In so ruling, the trial court relied on a workers' compensation treatise; the District of Columbia Workers' Compensation Act (WCA), D.C. Code § 32-1501 et seq. (2019 Repl.), which covers private-sector employees and does not directly apply to Ms. Jordan; and general language in § 1-623.07(a) providing compensation for injuries involving loss or partial loss of the use of a "function of the body." The trial court also stated that the CRO had applied an unduly rigid reading of § 1-623.07.

**II.**

"[W]e review agency decisions on appeal from the Superior Court the same way we review administrative [decisions] that come to us directly." *R.O. v. Dep't of Youth Rehab. Servs.*, 199 A.3d 1160, 1166 (D.C. 2019) (internal quotation marks omitted). Thus, we owe no deference to the trial court's ruling in this case. *Love v. District of Columbia Office of Emp. Appeals*, 90 A.3d 412, 420 (D.C. 2014). We have said that although "our review of legal rulings is de novo, we accord deference

to an agency's reasonable interpretation of the statute [the agency] administers." *Frazier v. District of Columbia Dep't of Emp't Servs.*, 229 A.3d 131, 139 (D.C. 2020). Ms. Jordan acknowledges that this court ordinarily would accord some deference to the CRO's interpretation of § 1-623.07, but she also suggests that the CRO's interpretation in this case is entitled to little or no deference because that interpretation is incorrect. We need not address the issue of deference, however, because we agree with the CRO that Ms. Jordan's claim is foreclosed as a matter of law.

During the course of this proceeding, Ms. Jordan's condition has been characterized in various ways: as PTSD, as a "whole person" disability, and as a disability of the "brain/head." We need not pick among these characterizations, because Ms. Jordan's claim is precluded under all of them.

We turn first to the language of § 1-623.07. *See, e.g.*, *Howard Univ. Hosp./Prop. & Cas. Guarantee Fund v. District of Columbia Dep't of Emp't Servs.*, 952 A.2d 168, 174 (D.C. 2008) ("Our inquiry regarding the meaning of the workers' compensation statute must begin, as always, with its language."). We conclude that the language of § 1-623.07 plainly forecloses Ms. Jordan's claim.

Ms. Jordan does not argue in this court that her disability is covered by any of the provisions in § 1-623.07(c) listing specific body parts. Nor does she argue that her disability is covered by the catch-all provision, § 1-623.07(c)(22) ("loss or loss of use of any other important external or internal organ of the body"); *see also* D.C. Code § 1-623.01(16) (for purposes of § 1-623.07, "organ" excludes brain). We therefore need not address those issues. Rather, Ms. Jordan argues that she is entitled to compensation under § 1-623.07 even if her disability does not fall within the schedule of items listed in subsection (c) of that provision. In other words, Ms. Jordan contends that the list in subsection (c) is not exhaustive. We disagree.

It is true, as Ms. Jordan points out, that § 1-623.07(a) speaks generally of compensation for "the loss, or loss of use, of a member or function of the body." But that general language is qualified by following language providing that such compensation will be awarded "as provided by the schedule in" § 1-623.07(c). D.C. Code § 1-623.07(a). As previously noted, § 1-623.07(c) lays out a detailed "compensation schedule," listing various body parts and specifying the duration of the award applicable to each body part. There is simply no room under § 1-623.07 for an award of compensation with respect to an unscheduled body part. By

authorizing compensation "as provided" in subsection (c), § 1-623.07(a) expressly limits its own scope. And by providing a lengthy list of the circumstances to which it applies, subsection (c) itself implies that it does not apply to other unlisted circumstances. *See, e.g.*, *Facebook, Inc. v. Wint*, 199 A.3d 625, 632 (D.C. 2019) (relying on principle of "*expressio unius exclusio alterius est*, under which the enumeration of things to which a statute applies is presumed to exclude things not mentioned") (internal quotation marks omitted); *Bolz v. District of Columbia*, 149 A.3d 1130, 1140 (D.C. 2016) ("[W]hen a list is enumerated it may be presumed to be exhaustive unless otherwise provided . . . .") (internal quotation marks omitted).

Ms. Jordan's proposed interpretation faces another serious obstacle. If no provision of subsection (c) applies to a given claimed disability, then § 1-623.07 provides no way to determine how many weeks' worth of benefits should be awarded with respect to that disability. We cannot accept an interpretation that would create such an unmanageable gap. *See generally*, *e.g.*, *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 615 (D.C. 2011) (rejecting proposed interpretation of statute in part because "the statute as so construed would not be workable").

Finally, the conclusion that subsection (c)'s list is exhaustive finds uniform support in the decisions of this court, other courts, and other administrative agencies. For example, in *Howard University Hospital v. District of Columbia Department of Employment Services*, 200 A.3d 1244 (D.C. 2019), this court interpreted the WCA, which (as previously noted) governs private-sector workers' compensation. One of the issues the court addressed was whether a disability of the shoulder could be the basis of a "schedule" award under the WCA, on the theory that the shoulder is part of the arm and the arm is a listed body part under the WPA schedule. *Id.* at 1251-54. The court held that the shoulder was not part of the arm, and thus that impairment of the shoulder could not itself be the basis for a schedule award under the WCA. *Id.* (We emphasized, however, that a schedule award based on the arm could rest on an injury to the shoulder that caused impairment of the use of the arm. *Id.* at 1253-54.) In reaching those conclusions, we explicitly relied on the premise that, under the WCA, "[i]f a claimant loses partial use *of a specified body part*, the claimant is entitled to compensation in proportion to the degree of loss of use." *Id.* at 1251 (emphasis added); *see also id.* ("In contrast, for other partially disabling injuries (i.e., to parts of the body not listed in the schedule, such as the back or neck), the worker's disability compensation is measured by his or her actual or imputed wage loss attributable to the injuries. *See* D.C. Code § 32-150 (3)(V).") (internal quotation marks omitted); *Dent v. District of Columbia Dep't of Emp't Servs.*, 158 A.3d 886,

894 (D.C. 2017) (Under the WCA, "[a] schedule award is for injuries to parts of the body listed in the statute"; "[a] non-schedule award involves compensation for disability to a part of the body not specified in the schedule award list and is calculated by reference to the employee's actual wage loss . . . .").

Similarly, the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 et seq. (2018), provides for schedule awards in language that is virtually identical to that of § 1-623.07(a) and (c). *See* 5 U.S.C. § 8107(a) (employee with "permanent disability involving the loss, or loss of use, of a member or function of the body" is entitled to compensation "as provided by the schedule in [5 U.S.C. § 8107(c)]"), (c) (schedule listing body parts and corresponding amount of award). Federal authorities have consistently concluded that FECA's schedule of body parts is exhaustive. *See, e.g.*, *Hefner v. Chao*, Civil No. 08cv1586 L(BLM), 2009 WL 2485754, at *3 (S.D. Cal. Aug. 11, 2009) ("To obtain compensation under FECA, the parts of the body, organs or functions must be specifically listed. Because injuries to the brain or spine are not specifically listed in [FECA or its implementing regulations], FECA compensation may not be awarded for those injuries."); *Fulton*, No. 02-1532, 2002 WL 31876671, at *2 (ECAB Nov. 12, 2002) ("A schedule award is not payable for the loss or loss of use of any part or function of the body not specifically enumerated in [FECA or related regulations] . . . . Not only is the brain

not specifically enumerated in [FECA] or the regulations, but under section 8101(19) of [FECA], Congress provided that 'for purposes of this subchapter,' the term organ 'excludes the brain, heart[,] and back.'").

The provisions of District's public-sector workers' compensation program "for the most part track those of [the program's] federal forerunner, FECA." *District of Columbia v. Thompson*, 593 A.2d 621, 630 (D.C. 1991) (brackets, ellipsis, and internal quotation marks omitted). For that reason, this court has given substantial weight to decisions interpreting FECA. *See, e.g.*, *Stackhouse v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 636, 638 (D.C. 2015) ("[W]hen interpreting [a] local statute, this court will look to federal cases interpreting [a] nearly identical federal statute."; "We find the [federal Employees' Compensation Appeals Board's] interpretation of [FECA] persuasive.") (internal quotation marks omitted). We thus accord substantial weight to the federal authorities concluding that FECA's schedule of body parts is exhaustive.

We are not persuaded by Ms. Jordan's arguments in support of the conclusion that § 1-623.07 should be interpreted to permit schedule awards based on claims not falling within the scope of the items listed in § 1-623.07(c).

First, Ms. Jordan accurately points out that workers' compensation provisions are typically given a "liberal construction by the courts to effectuate [their] humanitarian purposes." *Newell-Brinkley v. Walton*, 84 A.3d 53, 56 (D.C. 2014). As we recently reiterated, however:

> In applying the [WCA], we are aware of the principle that workers' compensation laws are to be liberally construed for the benefit of the employee. While that principle allows doubts to be resolved favorably to the employee, it does not relieve the courts of the obligation to apply the law as it is written and in accordance with its plain meaning.

*Kelly v. District of Columbia Dep't of Emp't Servs.*, 214 A.3d 996, 1008 (D.C. 2019) (internal quotation marks omitted).

Second, Ms. Jordan argues that awards for PTSD and other mental disabilities are available under the WCA and FECA, and such awards therefore should also be available to public-sector employees under § 1-623.07. The difficulty with this argument is that schedule awards are only one of several potential workers' compensation benefits. *See generally, e.g.*, *Dent*, 158 A.3d at 894-95 (in context of WCA, explaining differences among temporary disability awards, which are directly tied to proof of individual claimant's wage loss; schedule awards, which are not

directly tied to proof of individual claimant's wage loss; and non-schedule permanent disability awards, which are directly tied to proof of individual claimant's wage loss). The District's public-sector workers' compensation program provides several different forms of relief in addition to schedule awards under § 1-623.07. *See* D.C. Code § 1-623.03 (medical benefits), .04 (vocational rehabilitation benefits), .05 (total disability benefits), .06 (partial disability benefits). Our holding is simply that, as a matter of law, Ms. Jordan's claimed disability is not a permissible basis for a schedule award under § 1-623.07.

Relatedly, the authorities on which Ms. Jordan relies all address workers' compensation benefits other than schedule awards. *See, e.g.*, *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1195 (D.C. 2008) (en banc) (addressing claim under WCA for "temporary total disability benefits"); *Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006) (federal employee with PTSD was entitled to payment of medical benefits under FECA); 4 Arthur Larson et al., *Larson's Workers' Compensation Law* § 56.03[1], [5] (2020) (although mental or emotional injuries stemming from physical injuries may be compensable, noting contrary authority where claim was for schedule award) (citing *Burton Transp. Ctr., Inc. v. Willoughby*, 265 A.2d 22, 23-24 (Del. 1970) (rejecting claim for schedule award based on neurosis, because neurosis was not listed in schedule)). Ms. Jordan has not

cited, and we have not found, any judicial or administrative decision upholding a schedule award based on a disability that did not fall within the scope of the items listed in the applicable schedule.

For the foregoing reasons, the judgment of the Superior Court is reversed and the decision of the CRO denying the application for benefits under § 1-623.07 is affirmed.

*So ordered.*